Edward J. BARRETT, Plaintiff,

v.

MANUFACTURERS RAILWAY COMPANY, a corporation

and

United Transportation Union, the successor to Brotherhood of Locomotive Firemen and Enginemen, Defendants.

No. 70 C 289(3).

United States District Court,
E. D. Missouri, E. D.

April 1, 1971.

MEMORANDUM AND ORDER

WEBSTER, District Judge.

This is an action for review of Award 21562 of the National Railroad Adjustment Board dated October 14, 1970, based upon the decision of a Special Board of Adjustment, No. 741, formed pursuant to an agreement between the parties in accordance with the provisions of 45 U.S.C.A. 153, Second. Petitioner complains that the National Railroad Adjustment Board failed to make an award in his favor and asks this Court to hear and determine the grievance on its merits, render judgment as should have been rendered by the National Railroad Adjustment Board, or such other relief as is proper. Petitioner asserts jurisdiction of the Court under 45 U.S.C.A. 153(p) and (q).

The matter is before the Court on separate motions of the defendants for summary judgment. Defendant, United Transportation Union, moves for summary judgment on the ground that the Court does not have jurisdiction to grant the relief sought by plaintiff; that the Court does not have jurisdiction to review the award of the Special Board of Adjustment No. 741 or remand the dispute to the National Railroad Adjustment Board; and for the reasons in defendant Manufacturers Railway Company's motion for summary judgment. The latter motion states as grounds that the Court lacks jurisdiction over the subject matter, that plaintiff's Amended Petition for Review fails to state a claim for which relief can be granted, and that the pleadings and exhibits affirmatively show that the claim of petitioner was properly dismissed by the National Railroad Adjustment Board. The records before both the Special Adjustment Board and the National Railroad Adjustment Board and correspondence related thereto are submitted in support of the separate motions.

*Summary of the facts:* Petitioner E. J. Barrett was an engineer of Manufacturers Railway Company's (defendant Railway) yard switching crew which was

John P. Montrey and Joseph G. Stewart, St. Louis, Mo., for plaintiff.

Albert E. Schoenbeck, Schoenbeck & LaTourette, St. Louis, Mo., for Manufacturers Railway Co.

John H. Haley, Jr., Haley, Frederickson & Stubbs, St. Louis, Mo., for United Transportation Union.

involved in a collision. Petitioner was notified that he was charged with violation of existing rules in performance of duty. Petitioner was discharged December 28, 1964. The agreement between the Railway and petitioner's bargaining representative, Brotherhood of Locomotive Firemen and Enginemen to which defendant United Transportation Union (defendant Union) is successor, contained procedures for the handling of grievances.[1] Claim for reinstatement was made by defendant Union's predecessor on behalf of petitioner to the proper officer, and when disallowed, appeal was made to the Vice President of the defendant Railway, the highest officer of the Railway to receive claims and grievances. The appeal was denied for the reason that it was not made within the time limits of the agreement. The claim of petitioner for restoration to services and for pay and benefits lost since the discharge was submitted ex parte to the First Division of the National Railroad Adjustment Board by defendant Union's predecessor on March 4, 1966. The procedural question—whether the appeal to the Vice President was timely—was raised and presented in the ex parte submissions of both the Union and Railway to that Board.

Under the agreement of the parties, proceedings before the National Railroad Adjustment Board were to be taken within six months from the date of the decision of the highest officer of the Company authorized to handle grievances. Defendant Union contended the six month limitation began to run on September 8, 1965 while defendant Railway contended the time limitation started to run May 4, 1965. The dispute grew out of contradictory interpretations of the effect of various correspondence under the grievance procedure. The defendant Railway submitted this second dispute—whether the proceedings before the National Railroad Adjustment Board were timely within the terms of the agreement—to the Joint Committee.

The Joint Committee had been created by a supplemental agreement[2] between the Union and Railway (consistent with the provisions of 45 U.S.C.A. 153, Second) to consider disputes arising out of the National Rules Agreement, which contains the grievance procedures. When the Joint Committee could not resolve the dispute, pursuant to the terms of the supplemental agreement and 45 U.S.C.A. 153, Second as amended in 1966, Special Board of Adjustment No. 741 was established to arbitrate the dispute. The question at issue before the Joint Committee and Special Adjustment Board 741 was stated as follows:

"Did claimant or his representative fail to comply with the Provisions of Article 6, Rule 4, of the Agreement between the parties, (Section 17— Time Limit on Claims of the National Agreement of August 11, 1948), (1) when the Superintendent's decision of December 28, 1964, in the discipline case of Engineer E. J. Barrett, was not appealed to the next succeeding officer within sixty (60) days, and (2) when proceedings were not instituted before a tribunal having jurisdiction pursuant to law or agreement within six (6) months from the date of the decision of the highest officer on appeal, thus barring the following claim:

'Claim of Engineer E. J. Barrett for restoration to service with seniority unimpared and pay for all time and benefits lost since December 28, 1964.' "

By letter dated April 25, 1967 the National Railroad Adjustment Board notified the parties that the docket on petitioner's claim would be held in abeyance until certification by the Joint Committee of its decision on the claim before it.

The Special Board of Adjustment No. 741 became deadlocked on the issue and requested a referee be appointed by the National Mediation Board. Harold M.

---

1. See Appendix 1.

2. See Appendix 2.

Gilden was appointed as the neutral member of the Board and its decision was handed down June 14, 1968. The Special Adjustment Board held that the appeal to the Vice President, the highest officer, was timely, that his denial of the claim was made on May 12, 1965, and the six month limitation for institution of proceedings before the National Railroad Adjustment Board was not extended by agreement under Section 17(c) of the collective Agreement between the parties, and, therefore, the ex parte submission to the First Division, National Railroad Adjustment Board on March 4, 1966 was not timely, and the claim of petitioner E. J. Barrett was barred under Section 17 of the Agreement.

In Award 21562, the National Railroad Adjustment Board found that the decision of Special Board of Adjustment No. 741 disposed of the suit in its entirety and dismissed the case.

■ The grievance procedure established by Section 3 of the Railway Labor Act, 45 U.S.C.A. 153, gives exclusive primary jurisdiction over minor disputes to the Railway Adjustment Board, subject only to the provisions of 153, Second. The District Courts cannot hear and determine a grievance on the merits. The power of the Court to review the award of the NRAB is set out in 153 First (q):

"(q) If any employee * * * is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee * * may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for review of the division's order. * * * The court shall have jurisdiction to affirm the order of the division, or to set it aside, in whole or in part, or it may remand the proceedings to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. * * *"

Under 153, Second, jurisdiction of system, group or regional boards established by voluntary agreement or special boards established pursuant to the provisions of that section, over disputes growing out of grievances or out of the interpretation or application of the collective agreements is made co-extensive with the jurisdiction of the NRAB except as to claims pending with the NRAB for twelve months or less. Brotherhood of Locomotive Engineers v. Denver & R. G. W. R. R., 290 F.Supp. 612, 620 (D. Colo.1968) aff'd 411 F.2d 1115 (10th Cir. 1969). The effect of the award of such board and the jurisdiction of the Court for review is set out by the Act as follows: 153, Second:

"Such awards (of system, group, or regional boards established by voluntary agreement or special adjustment boards established under the terms of this section) shall be final and binding upon both parties to the dispute and if in favor of the petitioner, shall direct the other party to comply therewith on or before the day named. Compliance with such awards shall be enforcible by proceedings in the United States District Courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board."

■ While the wording of Section 153, Second appears to allow judicial action only to the extent allowed on compliance proceedings under 153, First (p) (allowing actions for enforcement of awards of the NRAB), judicially the extent of review of awards of Boards es-

tablished under 153, Second, has been construed to be equal to that provided for review of awards of the Adjustment Board under 153, First (p) and (q). Transportation-Communication Employees Union et al. v. St. Louis-San Francisco Railway Company, 296 F.Supp. 507 (E.D.Mo.1968).[3] The Court of Appeals for the Eighth Circuit in dismissing the appeal in the last cited case, upheld the jurisdiction of the District Court to remand the dispute to the Special Board. Transportation-Communication Division-Brotherhood, etc. v. St. Louis-San Francisco Ry. Co., 419 F.2d 933, 935 (1969). Jurisdiction to remand is based upon 153, First (q). It thus appears that the Court of Appeals approved the reasoning of the District Court that jurisdiction over 153, Second Boards is co-extensive with that of the National Railway Adjustment Board.

Insofar as petitioner asks this Court to "hear and determine the grievance" initially on the merits, the Court is without jurisdiction. Nor may the Court set aside the awards of either the NRAB or the Special Board and remand to division unless it finds a failure to comply with the requirements of the act, failure of the order to conform or confine itself to matters within the scope of jurisdiction of the board, or for fraud or corruption by a member. 45 U.S.C.A. 153.

Considering first the contention of petitioner that the NRAB did not consider the merits of the procedural dispute (Paragraph 17, b through e, of Petition for Review), the Court finds that the Board did conform to the provisions of the Act. The submission of that dispute was made to Special Board No. 741 under terms of the agreement of the parties and as authorized under 153, Second of the Act. The Act specifically makes such awards as made by the Special Board final and binding on the parties, and only reviewable, to a

limited degree. No review is proper by the NRAB.

While this Court has jurisdiction to review the award of Special Board No. 741, petitioner seeks such a review only by attacking the award of the NRAB. No facts are pleaded to show that the Special Board's award is invalid for any of the reasons set forth in the Act. Furthermore, the Award of Board 741 was a decision on the merits of a claim involving the application of a collective agreement to an undisputed series of correspondence and acts of the parties undertaken to process a grievance. This Court could not on review substitute its interpretation for that of the Board. Gunther v. San Diego & A. E. Ry., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965); Transportation-Communication Employees Union et al. v. St. Louis-San Francisco Railway Company, 296 F.Supp. 507 (E.D.Mo.1968), supra; Taylor v. Hudson Rapid Tubes Corp., 362 F.2d 748 (CA3rd Cir. 1966).

The contention of petitioner that the award is invalid because defendant Railway submitted the procedural claim to the Special Board is without merit. Under the agreement of the parties, the submission was proper. Petitioner was represented by defendant Union throughout the processing of the grievance and before Special Board No. 741. No contention is made that petitioner's interests in the submission of that claim were not properly represented. Furthermore, it was not the ex parte submission by defendant Railway which deprived petitioner of his right to be heard before the NRAB, but the timing of the filing of his appeal. The refusal of the Vice President of defendant Railway to consider the appeal did not deprive the NRAB of corrective power had the submission of the dispute to it been timely. See Atlantic Coast Line R. Co. v. Pope, 119 F.2d 39 (4th Cir. 1941); Breeland v. Southern Pacific Co., 231 F.2d 576 (9th Cir. 1955).

3. See Appendix 3.

The third contention, that defendant Union failed to properly represent petitioner and protect his rights, is not grounds for review of the award. Petitioner was free, at any time to process his own grievance, and appeal to the NRAB. Elgin, J & E R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1944) adhered to on rehearing 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1945); McElroy v. Terminal Railroad Association of St. Louis, 392 F.2d 966 (7th Cir. 1968), cert. denied 393 U.S. 1015, 89 S.Ct. 611, 21 L.Ed.2d 559 (1969). This contention of plaintiff appears to be an attempt to state a cause of action against the Union independent of his petition for review. As such, he fails to state a claim. Neither the facts pleaded nor the relief sought supports such a claim. See Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed. 2d 580 (1964); Neal v. System Board of Adjustment, 348 F.2d 722 (CA8th) (internal grievance procedure prerequisite) Wade v. Southern Pacific Company, 243 F.Supp. 307 (S.D.Texas 1965) (Federal question must be involved).

Finally, petitioner seeks to collaterally attack the award on the ground that M. E. Parks, who was one of three Railway members of the Special Board deciding the procedural claim, had previously represented the Railway in attempting to negotiate a settlement of the discharge claim.

In D'Elia v. New York, New Haven and Hartford Railroad, 338 F.2d 701 (2nd Cir. 1964) the petitioner sought to have an award of the NRAB set aside on the ground that the hearing before the board was not impartial when "a transcript made by a prejudiced hearing officer" who represented the employer railroad was presented. The Court held that the requirements of due process were satisfied if the petitioner received an impartial hearing when the case reached the neutral referee designated to sit with the Board, and that the allegations as to denial of due process were conclusions insufficient to resist motions for summary judgment.

In this case Special Board 741, was deadlocked and a neutral referee appointed as authorized by the Act. Petitioner has failed to show how the bias, if any, of Mr. Parks affected the decision of the Board sitting with the neutral member—Mr. Gilden.

Furthermore, the facts pleaded do not rise to an attack on due process grounds. The procedure of selecting partisan members of the board is authorized by statute. No exclusion of those with knowledge of affected claims is provided for in or reasonably contemplated by the Act. The purpose of the Act is to provide an exclusive and comprehensive system for the settlement of minor disputes through process in the nature of compulsory arbitration, using those with expertise in the day to day operation of the railroad industry. See Slocum v. Delaware, L & W R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1949). In many types of grievances, previous knowledge would be virtually impossible to avoid. Avoidance of knowledge of affected claims would be especially difficult where local boards are established. It does not follow from the facts pleaded that Mr. Parks had an interest in the discharge dispute so as to constitute bias on the procedural dispute requiring judicial review of the Board's decision.

In conclusion, the pleadings, in the light of the record offered in support of the separate motions for summary judgment, do not present facts which permit review of the awards of either the NRAB or Special Board No. 741. The Court finds that there is no genuine issue as to any material fact and that movants are entitled to summary judgment as a matter of law and said motions will be and are sustained.

## APPENDIX

1. Article 6 Rule 4 (Section 17—Time Limit on Claims) provides:

All claims or grievances arising on and after November 1, 1948 shall be handled as follows:

(a) All claims or grievances must be presented in writing by or on behalf of

the employee involved, to the officer of the company authorized to receive same, within sixty days from the date of the occurrence on which the claim or grievance is based. Should any such claim or grievance be disallowed, the carrier shall, within sixty days from the date same is filed, notify the employee or his representative of the reasons for such disallowance. If not so notified, the claim or grievance shall be considered valid and settled accordingly, but this shall not be considered as a precedent or waiver of the contentions of the carrier as to other similar claims or grievances.

(b) If a disallowed claim or grievance is to be appealed, such appeal must be taken within sixty days from receipt of notice of disallowance, and the representative of the carrier shall be notified of the rejection of his decision. Failing to comply with this provision the matter shall be considered closed, but this shall not be considered as a precedent or waiver of the contentions of the employees as to other similar claims or grievances.

(c) The procedure outlined in paragraphs (a) and (b) shall govern in appeals taken to each succeeding officer. Decision by the highest officer designated to handle claims and grievances shall be final and binding unless within sixty days after written notice of the decision of said officer he is notified in writing that his decision is not accepted. All claims or grievances involved in a decision of the highest officer shall be barred unless within six months from the date of said officer's decision proceedings are instituted by the employee or his duly authorized representative before a tribunal having jurisdiction pursuant to law or agreement of the claim or grievance involved. It is understood, however, that the parties may by agreement in any particular case extend the six months period herein referred to.

(d) All rights of a claimant involved in continuing alleged violations of agreement shall, under this rule, be fully protected by continuing to file a claim or grievance for each occurrence (or tour of duty) up to the time when such claim or grievance is disallowed by the first officer of the carrier. With respect to claims and grievances involving an employee held out of service in discipline cause, the original notice of request for reinstatement with pay for time lost shall be sufficient.

(e) This rule recognizes the right of representatives of the organizations parties hereto to file and prosecute claims and grievances for and on behalf of the employees they represent.

2. Memorandum Agreement of June 29, 1949:

In connection with the understanding reached between the Carriers' Conference Committees and representatives of the Brotherhood of Locomotive Engineers, Brotherhood of Locomotive Firemen and Enginemen and the Switchmen's Union of North America, dated June 3, 1949, at Chicago, Ill., creating a Joint Committee to hear and determine controversies and disputes growing out of the National Rules Agreement of August 11, 1948; the understanding of June 3rd reading:

"Any dispute or controversy arising on any carrier as to interpretation or application of any of the terms of the Rules Agreement, dated at Washington, D. C., August 11, 1948, and not settled on such carrier, shall be referred jointly, or by either party for decision to a committee, the carrier members of which shall be three members of the Carriers' Conference Committees signatories thereto, or their successors, and the employee members of which shall be one representative selected by each of the three organizations signatories thereto, or their representatives, or successors. Decisions of such Committee shall be final and binding."

The said understanding of June 3rd has been ratified and is hereby adopted by the employees represented by the organizations specified above and the carriers listed in Appendix A.

It is agreed that this Joint Committee, when established will be a tribunal within the meaning of paragraph (c) of Section 17 of such agreement. In cases where the Joint Committee is deadlocked and no other disposition of the case is agreed upon by the Joint Committee then the parties shall have six months. from the date of such deadlock to progress the case to a tribunal having jurisdiction pursuant to law or agreement.

3. Judge Meredith stated in his opinion:

Title 45, U.S.C. § 153, Second, on its face, seems to limit the jurisdiction of the United States district courts to enforcement of the awards of the boards. That section of the statute refers only to enforcement, it does not talk of the setting aside of an award as does 45 U.S.C. § 153, First, (p) and (q). If the United States district courts have jurisdiction to do anything other than enforce such orders, it must arise by incorporation of all the provisions of 45 U.S.C. § 153, First, (p) and (q), into 45 U.S.C. § 153, Second, by the phrase "in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board.

"The Railway Labor Act, 45 U.S.C. § 151, et seq., was amended in 1966. Among the provisions amended are those under consideration, 45 U.S.C. § 153, First, (p) and (q), and 45 U.S.C. § 153, Second. The legislative history of the 1966 amendments indicates conclusively that Congress intended for the United States district courts to have jurisdiction to review the awards of the boards created by agreement of the parties under 45 U.S.C. § 153, Second, to the same extent that the district courts were granted jurisdiction to review orders of the Adjustment Board under 45 U.S.C. § 153, First, (p) and (q). See S.Rep. No. 1201, 89th Cong., 2d Sess., June 2, 1966, 2 U.S.Cong. & Admin.News (1966), p. 2285 at 2289. See also Dominguez v. National Airlines, Inc., 279 F. Supp. 392 (S.D.N.Y.1968) (dictum).