**Robert J. ADAMCZEWSKI, Plaintiff,**

v.

**NORTHWEST AIRLINES, INC., Defendant.**

**No. 80 C 6873.**

United States District Court, N. D. Illinois, E. D.

Dec. 31, 1981.

Anthony Intini, Intini & Goldstein, Chicago, Ill., for plaintiff.

Joseph J. Hasman, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Robert J. Adamczewski ("Adamczewski") sues Northwest Airlines, Inc. ("Northwest") for a declaratory judgment invalidating an arbitrator's award rendered by a System Board of Adjustment (the "Board") established in compliance with 45 U.S.C. § 184 ("Section 184"). That award held Adamczewski had been discharged from his job with Northwest for just cause. Both parties have moved for summary judgment. For the reasons stated in this memorandum opinion and order, Northwest's motion is granted and Adamczewski's motion is denied.

### Facts [1]

On January 23, 1980 [2] one of Adamczewski's supervisors noticed his car parked in an unusual location—inside Northwest's O'Hare International Airport hangar at a position immediately opposite the entrance to the stockroom (Adamczewski was a stock clerk). Though Adamczewski offered a plausible explanation, the supervisor still had misgivings and telephoned a fellow supervisor (the first having gone home in the interim) to check on the car's contents. On request Adamczewski opened his trunk, and the supervisor found a plastic bag containing about 75 paper cups bearing the Trans World Airlines ("TWA") logo and about 50 packets of Maxwell House coffee (served on TWA flights). Adamczewski said the property had been given him (no Northwest property having been given in exchange) by a friend who was a TWA employee.

Next day Adamczewski was suspended for the incident, and TWA asked that Northwest try to determine the name of the TWA employee involved in the unauthorized disposition. On January 25 and 28 Northwest convened two separate "investigation meetings," at which Adamczewski, a Machinists' Union representative and Adamczewski's supervisors were present. Despite numerous requests Adamczewski persistently refused to identify the TWA employee involved. During the second session (agreed to constitute a first-step grievance meeting) a Northwest official warned Adamczewski that if he did not answer that question he would be guilty of insubordination and Northwest would fire him. Upon his union representative's advice that he had no contractual obligation to reveal the name, Adamczewski maintained his refusal. Northwest discharged Adamczewski for:

> Insubordination. Failing to disclose as directed, the name of TWA airport em-

1. In light of the narrow scope of review in which this Court can properly indulge itself, no extended discussion of the factual setting for this case is required. This section will limit itself to a summary of the record the Court has reviewed at length.

2. Because all relevant dates occurred in 1980, the year is omitted hereafter.

ployee who gave you misappropriated goods which you accepted and failure to cooperate in a Company investigation.

Arbitration followed before the Board (established to process employee grievances pursuant to Section 184 and the collective bargaining agreement between Northwest and the Machinists' Union (the "Agreement")). On September 17 the Board held in a 2–1 vote that Adamczewski's discharge was for "just cause." This action followed.

### Scope of Review

Despite paying lip service to the principles governing judicial review of labor arbitrations generally and Board decisions in particular, Adamczewski approaches this matter as though this Court were an appellate arbitrator—or more accurately a de novo extension of the original arbitration. Much of his 33-page summary judgment memorandum is devoted to an argumentative discussion of the facts, quarreling with credibility of witnesses and findings by the Board.[3]

▮ All that is of course impermissible. Decisions of System Boards of Review[4] are susceptible to very limited judicial scrutiny indeed—"among the narrowest known to the law." *Union Pacific Railroad v. Sheehan*, 439 U.S. 89, 91, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978). In fact *Union Pacific* (*id.* at 93, 99 S.Ct. at 401) teaches that such an arbitration decision may be overturned only upon one of three grounds:

(1) failure of the adjustment board to comply with the requirements of the statute;

(2) failure of the board to conform or confine itself to matters within the scope of its jurisdiction; and

(3) fraud or corruption.

### Adamczewski's Contentions

If the underbrush of obviously inappropriate factually-related arguments is cleared away, Adamczewski's contentions essentially boil down to two:

(1) Both the Board's procedure and its result violated Adamczewski's rights to "fundamental due process."

(2) Its decision was not made "within its jurisdiction" because (a) it punished Adamczewski for behavior "beyond and unrelated to the employment relationship" and (b) it was not authorized by the collective bargaining agreement and Northwest's implementing rules and regulations.

### 1. Due Process

▮ Adamczewski's first argument deserves short shrift, for it is foreclosed by *Union Pacific Railroad v. Sheehan*. There the Supreme Court reversed the decision of the Court of Appeals for the Tenth Circuit, which had held that the board's failure to consider an argument as to tolling of time limits violated the grievant's "right of due process," 576 F.2d 854, 857 (10th Cir. 1978). As the Supreme Court said, 439 U.S. at 93, 99 S.Ct. at 401:

Section 153 First (g) unequivocally states that the "findings and order of the [Adjustment Board] shall be conclusive on the parties" and may be set aside only for the three reasons specified therein. We have time and again emphasized that this statutory language means just what it says.

Because Adamczewski's "due process" argument does not implicate any of the three specified reasons, it cannot be heard. But before the subject is closed the Court is constrained to observe that Adamczewski's Br. 27–28 sought to rely on a Tenth Circuit decision in *Sheehan* that was *reversed*—per

---

**3.** Much of the remainder of the memorandum is spent in a discursive and sometimes misleading discussion of the case law. There is good common sense underlying this District Court's General Rule 9(d), limiting briefs to 15 pages unless specifically authorized.

**4.** Such Boards are the airline counterparts of the procedures established for rail carrier-employee disputes under the Railway Labor Act, 45 U.S.C. §§ 151 ff. Case law under the latter provisions is fully applicable to the Board (see *Hunt v. Northwest Airlines, Inc.*, 600 F.2d 176, 178–79 (8th Cir. 1979)) and will be cited interchangeably with airline cases in this opinion.

curiam at that—by the Supreme Court. Not only did counsel discuss the reversed holding at length as good law, failing to inform this Court of its reversal, but their citation of the case ("*Sheehan* . . . 576 F.2d 854, 856 (10th Cir. . . . 1978), rehearing denied, 439 U.S. 1135 . . .") was affirmatively misleading.[5] It is entirely possible to be unaware of a case's subsequent history (failure to Shepardize will produce that result), but counsel's knowledge of the "439 U.S. 1135" citation makes their conduct inexcusable (page 1135, 99 S.Ct. 1060, 59 L.Ed.2d 98 specifically cited "*ante*, p. 89 [99 S.Ct. p. 400]," the opinion reversing the Tenth Circuit).

### 2. *Jurisdiction*

■ Adamczewski's second argument fares little better than the ill-conceived due process claim. Jurisdictional attacks on a Board's decision are sustainable only if it is (*International Ass'n of Machinists v. Southern Pacific Transportation Co.*, 626 F.2d 715, 717 (9th Cir. 1980), quoting *Railroad Trainmen v. Central of Georgia Railway*, 415 F.2d 403, 411–12 (5th Cir. 1969)):

> without foundation in reason or fact . . . [A]n award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement.

It is irrelevant that this Court might read the underlying agreement differently, so long as the Board's construction is a tenable one.

Under Article II Section (B) of the Agreement, "The Union agrees all employees covered by this Agreement shall be governed by company rules, regulations and orders issued by properly designated authorities of the company." Although the rules and regulations do not in terms cover the exact behavior for which Adamczewski was discharged, the Board's determination was "rationally inferable" from some of them:

(1) Part II, Rule 2 provides, "Employees shall obey the orders of their supervisors *at all times*" (emphasis supplied). Certainly the Board could reasonably have found that rule applied to Adamczewski's refusal to answer the supervisors' questions at the January 28 meeting, the cause of his discharge. Indeed the Board found specifically that the supervisors "ordered" Adamczewski to answer the question.

(2) Even though Northwest's own property was not involved, it has a legitimate (and direct) interest in making sure that its employees have no involvement in thefts from *any* airlines. That fact could reasonably bear on the Board's construction of the Agreement.

(3) Part II, Rule 18, describes various sorts of infractions—stealing, deliberate damaging of property and so forth—as reasons for discharge. In light of the concept in paragraph (2), the Board could rationally have construed the Rule (under *ejusdem generis* principles) as covering not only the listed items but the like-kind conduct that prompted the order to Adamczewski.

(4) In the same way a broad reading of Part II, Rule 14, on stealing could have been relied upon by the Board to reach its result.

Given the narrow range of judicial review, this Court must conclude that the prohibitions the Board could have relied upon to find Adamczewski's discharge with "just cause" were at least "rationally inferable" from the letter of the Agreement. Accordingly the Board's order must be upheld as within its jurisdiction.

### *Conclusion*

There is no dispute as to any material fact, and Northwest is entitled to a judgment as a matter of law. Northwest's summary judgment motion is therefore granted and Adamczewski's like motion is denied.

---

**5.** Reference to "rehearing denied" gave a clue to the Court that there had been some action to rehear. But counsel's omission of any mention of the reversal (or of the substantive Supreme Court citation) cannot be condoned.